**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| WESTCHESTER PUTNAM COUNTIES HEAVY & HIGHWAY LABORERS LOCAL 60 BENEFITS FUND, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ATKORE INC., WILLIAM E. WALTZ JR., JOHN M. DEITZER, and DAVID P. JOHNSON,<br><br>Defendants. | Case No.: 1:25-cv-01851<br><br>Hon. John J. Tharp, Jr.<br><br><u>CLASS ACTION</u> |
| KING P. COLES, II, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ATKORE INC., WILLIAM E. WALTZ JR., JOHN M. DEITZER, and DAVID P. JOHNSON,<br><br>Defendants. | Case No.: 1:25-cv-02686<br><br>Hon. John F. Kness<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE
INSTITUTIONAL INVESTORS FOR
CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF,
<u>AND APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ..................................................................... 1

II.     SUMMARY OF THE PENDING ACTIONS .................................................. 3

III.     ARGUMENT ................................................................................................. 5

       A.     The Related Actions Should be Consolidated ......................................... 5

       B.     The PSLRA Standard for Appointing Lead Plaintiff ............................... 6

       C.     The Institutional Investors Are the "Most Adequate Plaintiff" and Should be Appointed Lead Plaintiff ........................................................ 7

            1.     The Institutional Investors Have Satisfied the PSLRA's Procedural Requirements ...................................................... 7

            2.     The Institutional Investors Have the Largest Financial Interest in the Relief Sought by the Class ..................................... 8

            3.     The Institutional Investors Satisfy Rule 23's Typicality and Adequacy Requirements ................................................ 8

            4.     The Institutional Investors Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA ....................................... 10

       D.     The Court Should Approve the Institutional Investors' Selection of Counsel ............................................................................................... 12

IV.     CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**PAGE(S)**

Cases

*Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*,
No. 12-cv-3297, 2012 WL 5471110 (N.D. Ill. Nov. 9, 2012) ...................................... 9, 10, 11
*Fifth Third*,
2020 WL 9720422 ............................................................................................................. 12
*Grobler v. Inotiv, Inc.*,
No. 22-cv-45, 2022 WL 4181295 (N.D. Ind. Sept. 12, 2022) .................................... 10
*Hedick v. Kraft Heinz Co.*,
No. 19-cv-1339, 2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) ................................... 8, 9
*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................................ 10
*Munch v. Sprout Social, Inc.*,
No. 24-cv-5582, 2024 WL 4753734 (N.D. Ill. Nov. 12, 2024) .................................. 1
*Silverman v. Motorola, Inc.*,
2012 WL 1597388 (N.D. Ill. May 7, 2012) ................................................................ 15
*Taubenfeld v. Career Educ. Corp.*,
No. 03-cv-8884, 2004 WL 554810 (N.D. Ill. Mar. 19, 2004) ..................................... 6

Statutes

15 U.S.C. § 78j(b) and 78t(a)............................................................................................ 3
15 U.S.C. § 78u-4(a)(1) ..................................................................................................... 6
15 U.S.C. § 78u-4(a)(3) (B)(i) ........................................................................................... 6
15 U.S.C. § 78u-4(a)(3) (B)(iii)(II)..................................................................................... 7
15 U.S.C. § 78u-4(a)(3)(A)(i) ............................................................................................ 6
15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................ 1, 6
15 U.S.C. § 78u-4(a)(3)(B)(ii) ........................................................................................... 5
15 U.S.C. § 78u-4(a)(3)(B)(iii) ...................................................................................... 2, 8
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)....................................................................................... 7
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).................................................................................. 8
15 U.S.C. § 78u-4(a)(3)(B)(v) .......................................................................................... 12

Rules

Fed. R. Civ. P. 23(a) .......................................................................................................... 8
Fed. R. Civ. P. 42(a) ....................................................................................................... 5, 6
Rule 23 of the Federal Rules of Civil Procedure ...................................................... 2, 8, 10
Rule 23(a)(3)................................................................................................................... 8, 9
Rule 23(a)(4).................................................................................................................... 9
Rule 42 of the Federal Rules of Civil Procedure ............................................................... 1

Regulations

17 C.F.R. § 240.10b-5.................................................................................................................. 3

Other Authorities

1995 U.S.C.C.A.N. 730 ............................................................................................................. 10
733.............................................................................................................................................. 10
H.R. Conf. Rep. No. 104-369 .................................................................................................... 10
H.R. Rep. No. 104-327 .............................................................................................................. 10

Proposed Lead Plaintiff the Public Employees' Retirement System of Mississippi ("MS PERS") and 1199SEIU Health Care Employees Pension Fund ("1199SEIU Fund," and together with MS PERS, the "Institutional Investors") respectfully submit this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of their motion for an order: (1) consolidating the above-captioned Related Actions[1] pursuant to Rule 42 of the Federal Rules of Civil Procedure ("Rule 42"); (2) appointing the Institutional Investors as Lead Plaintiff for a class of all persons and entities that purchased Atkore Inc. ("Atkore" or the "Company") common stock between August 2, 2022 and February 3, 2025, inclusive (the "Class Period"),[2] and were damaged thereby (the "Class"); and (3) approving their selection of Saxena White P.A. ("Saxena White") and Robbins Geller Rudman & Dowd LLP (" Robbins Geller") as Lead Counsel for the Class.

## I.    PRELIMINARY STATEMENT

The Institutional Investors respectfully submit that they are the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff on behalf of the Class. The Institutional Investors satisfy all of the prerequisites for lead plaintiff appointment. As set forth below, the Institutional Investors incurred a substantial loss of $8,709,588 on their purchases of Atkore common stock during the Class Period under the prevailing last-in, first-out ("LIFO") loss

---

[1] The Related Actions are *Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefits Fund v. Atkore Inc.*, No. 25-cv-1851 (N.D. Ill. filed Feb. 21, 2025) (the "*Local 60* Action"), and *Coles, II v. Atkore Inc.*, No. 25-cv-2686 (N.D. Ill. filed Mar. 14, 2025) (the "*Coles* Action"). All emphases are added and all citations are omitted herein unless otherwise indicated.

[2] The *Local 60* Action was filed on behalf of all purchasers of Atkore common stock between February 1, 2024 and February 3, 2025, inclusive. The *Coles* Action was filed on behalf of all purchasers of Atkore common stock from August 2, 2022 through February 3, 2025, inclusive. While the Actions assert different, albeit overlapping, class periods, for purposes of appointing a lead plaintiff, the longest alleged class period governs. *See*, *e.g.*, *Munch v. Sprout Social, Inc.*, No. 24-cv-5582, 2024 WL 4753734, at *4 (N.D. Ill. Nov. 12, 2024) (applying the "longer class period" in determining the largest financial interest).

1

calculation method. *See* Exhibit A, attached to the Declaration of Jennifer N. Caringal in Support of the Institutional Investors' Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Caringal Decl."), filed concurrently herewith (PSLRA Certifications of the Institutional Investors) and Caringal Decl., Exhibit B (table reflecting calculation of the Institutional Investors' financial loss ("Loss Analysis")). Thus, the Institutional Investors have a substantial financial interest in directing this litigation and recovering the losses suffered by the Class, which include their members and beneficiaries—an interest believed to be greater than that of any other qualified movant.

The Institutional Investors also meet the typicality and adequacy requirements set out in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because their claims are typical of those of absent Class members and they will fairly and adequately represent the interests of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). In addition, as set forth in their Joint Declaration submitted herewith, the Institutional Investors are familiar with the obligations and responsibilities of the Lead Plaintiff, are not subject to any unique defenses, and have the incentive and ability to effectively supervise the prosecution of this litigation in the best interests of the Class. *See* Caringal Decl., Ex. C. Indeed, the PSLRA's legislative history shows that the Institutional Investors are precisely the type of institutional investors whose participation in securities class actions the PSLRA was meant to foster. In short, the Institutional Investors are the "most adequate plaintiff" and should be appointed Lead Plaintiff.

The Institutional Investors also respectfully request that the Court approve their selection of Saxena White and Robbins Geller to serve as Lead Counsel for the Class. Saxena White and Robbins Geller are leading national law firms specializing in representing sophisticated institutional investors in securities and shareholder litigation, with substantial experience and

success prosecuting securities class actions and other forms of shareholder litigation in this District and throughout the nation.

## II.    SUMMARY OF THE PENDING ACTIONS

The Related Actions are securities class actions brought against: (1) Atkore;[3] (2) William E. Waltz Jr. ("CEO Waltz"), the Company's Chief Executive Officer ("CEO"); (3) John M. Deitzer ("CFO Deitzer"), the Company's Chief Financial Officer ("CFO"); and David P. Johnson ("CFO Johnson"), the Company's former CFO (together, "Defendants"), for violations of Sections 10(b) and 20(a) of the Exchange Act (17 C.F.R. § 240.10b-5), as amended by the PSLRA (15 U.S.C. § 78j(b) and 78t(a)) and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) during the Class Period.

Based in the United States, Atkore is a manufacturer of electrical, safety, and infrastructure products. Among other products, Atkore manufactures polyvinyl chloride ("PVC") water pipes and electrical conduit pipes (together, "PVC Pipes"). As a result of exorbitant shipping costs during the COVID-19 pandemic, foreign manufacturers were unable to profitably sell PVC Pipes in the United States. In the absence of foreign competition, Atkore and other U.S.-based PVC Pipe manufacturers engaged in anticompetitive conduct to artificially inflate PVC Pipe pricing. Beginning in late 2022, Atkore informed investors that the PVC Pipe pricing increases it had benefitted from over the past several years had begun to decline.

Unbeknownst to investors, Defendants failed to disclose that: (1) Atkore engaged in an anticompetitive price-fixing scheme that artificially inflated the price of PVC Pipes; (2) Atkore reaped significant, unsustainable financial benefits from its anticompetitive conduct; (3) Atkore and its price-fixing co-conspirators were no longer able to artificially inflate the price of PVC

---

[3] Atkore is headquartered in Harvey, Illinois. The Company's stock trades on the New York Stock Exchange under the ticker symbol "ATKR."

3

Pipes, resulting in a substantial decrease in the price of PVC Pipes; and (4) Atkore's business and operations were negatively impacted.

On May 7, 2024, Atkore announced its financial results for the second quarter of the fiscal year 2024. The Company disclosed that it was lowering its fiscal 2024 guidance for adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA"). During the corresponding earnings call, Atkore explained to investors that the pricing environment could be "challenged" heading into the second half of 2024. On this news, Atkore common stock declined $22.06 per share, or 12.5%, to close at $154.34 per share on May 7, 2024.

On July 23, 2024, Atkore announced that CFO Johnson had resigned as the Company's CFO and Chief Accounting Officer ("CAO"), effective August 9, 2024, and that CFO Deitzer would take over as the Company's CFO. On this news, Atkore common stock declined $12.37 per share, or 8.5%, to close at $132.63 on July 24, 2024.

On July 24, 2024, the short seller firm ManBear published a short report titled "Pipe Price Fixing," accusing Atkore and other PVC Pipe manufacturers of engaging in a price-fixing scheme that "resulted in massively inflated" PVC Pipe prices that "defy economic logic."

On August 6, 2024, Atkore announced its third quarter fiscal 2024 financial results, reporting adjusted earnings per share ("EPS") that missed analysts' estimates. Atkore also lowered its fiscal 2024 guidance for adjusted EBITDA. During the accompanying earnings call, CEO Waltz informed investors that "pricing was softer than expected due to slower end markets, particularly for our PVC conduit business[.]" On this news, Atkore common stock declined $17.41 per share, nearly 15%, to close at $101.05 per share on August 6, 2024.

Weeks later, Atkore was named as a defendant in several civil antitrust lawsuits. *See, e.g., In re PVC Pipe Antitrust Litig.*, No. 24-cv-7639 (N.D. Ill. filed Aug. 23, 2024), alleging that Atkore

4

and other U.S.-based PVC Pipe manufactures engaged in a price-fixing scheme that artificially inflated the price of PVC Pipes.

The truth was fully revealed on February 4, 2025, when Atkore announced its financial results for the first quarter of fiscal year 2025, reporting net sales of $661.6 million. Atkore significantly reduced its adjusted EPS and EBITDA guidance for the rest of fiscal year 2025. During the related earnings call, CFO Deitzer disclosed that the guidance reduction was due to the poor performance of Atkore's PVC business, noting that "roughly $75 million or 3/4 of that is on the PVC side." On this news, Atkore common stock fell $15.59 per share, or nearly 20%, to close at $64.13 per share on February 4, 2025.

Defendants' material misrepresentations and omissions, and the revelations thereof, have thus caused the Institutional Investors and the Class to incur substantial damages.

## III.    ARGUMENT

### A.    The Related Actions Should be Consolidated

Two related securities class actions are pending before the Court.[4] The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Rule 42(a) specifies that consolidation is appropriate when actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a).

---

[4] The *Local 60* Action has been assigned to Judge Tharp. The *Coles* Action has been assigned to Judge Kness. Saxena White, counsel for Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefits Fund ("Local 60"), intends to file a motion on behalf of Local 60 for reassignment of the *Coles* Action from Judge Kness to Judge Tharp as related to the earlier-numbered *Local 60* Action. Saxena White has contacted counsel for plaintiff and defendants in the *Coles* Action to determine their positions on this motion. King P. Coles, II and defendants take no position on the reassignment motion.

Here, the Related Actions are well-suited for consolidation. Both Actions allege a substantially similar, unlawful, and/or fraudulent scheme relating to similar parties, transactions, and events during overlapping time frames. Both Actions allege that Defendants made materially false and misleading statements and omissions concerning Atkore's business and prospects. In addition, because the Related Actions are based on similar facts and involve the same subject matter, the same discovery will be relevant to both actions. *See Taubenfeld v. Career Educ. Corp.*, No. 03-cv-8884, 2004 WL 554810, at \*1 (N.D. Ill. Mar. 19, 2004) (consolidating related securities class actions as doing so "will result in substantial savings of judicial time and effort"). Accordingly, consolidation is appropriate under Rule 42(a) and the PSLRA, and the Institutional Investors respectfully submit that the Related Actions should be consolidated.

### B. The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as Lead Plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3) (B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (i) filed a complaint or timely filed a motion to serve as Lead Plaintiff, (ii) has the largest financial interest in the relief sought by the class, and (iii) otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

**C.      The Institutional Investors Are the "Most Adequate Plaintiff" and Should be Appointed Lead Plaintiff**

The Institutional Investors respectfully submit that they are presumptively the "most adequate plaintiff" because they have complied with the PSLRA's procedural requirements, possess the largest financial interest of any qualified movant, and satisfy Rule 23's typicality and adequacy requirements.

**1.      The Institutional Investors Have Satisfied the PSLRA's Procedural Requirements**

Pursuant to the PSLRA, the plaintiff in the *Local 60* Action, represented by Saxena White, caused a notice regarding the pendency of this case to be published on *GlobeNewswire*, a widely circulated, national business-oriented news wire service, on February 22, 2025. *See* Notice, Caringal Decl., Ex. D. That notice provided that investors had 60 days from the date of the notice to file a motion for Lead Plaintiff appointment, *i.e.*, on or before April 23, 2025. *Id.* Thus, the Institutional Investors have filed their motion within the required time frame.

**2.** **The Institutional Investors Have the Largest Financial Interest in the Relief Sought by the Class**

During the Class Period, the Institutional Investors incurred a substantial loss of $8,709,588 on their transactions in Atkore common stock. *See* Loss Analysis, Caringal Decl., Ex. B. The Institutional Investors are unaware of any other plaintiff that has a larger financial interest in the outcome of this litigation and also satisfies the typicality and adequacy requirements of Rule 23. Accordingly, the Institutional Investors have the largest financial interest of any qualified movant seeking Lead Plaintiff status, and, because they satisfy the applicable requirements of Rule 23, as discussed below, are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

**3.** **The Institutional Investors Satisfy Rule 23's Typicality and Adequacy Requirements**

In addition to requiring the identification of the movant with the largest financial interest, the PSLRA also directs that a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). At this stage of the litigation, however, a movant need only make a "preliminary showing" that it satisfies the typicality and adequacy requirements of Rule 23. *Hedick v. Kraft Heinz Co.*, No. 19-cv-1339, 2019 WL 4958238, at *8 (N.D. Ill. Oct. 8, 2019);

**a.** **The Institutional Investors' Claims are Typical of Those of the Class**

Pursuant to Rule 23(a)(3), the claims or defenses of the representative party must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality exists where

8

a plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, No. 12-cv-3297, 2012 WL 5471110, at *5 (N.D. Ill. Nov. 9, 2012) (internal citations and quotations omitted).

Here, the claims of the Institutional Investors and all other Class members arise from the same course of events and are based on the same legal arguments. Like all other Class members, the Institutional Investors: (1) purchased Atkore common stock during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged when the truth was revealed. *See id.* (discussing typicality requirement). These shared claims, which arise under a common legal theory and from the same events and course of conduct as those of the other Class members, satisfy Rule 23(a)(3)'s typicality requirement. As such, the Institutional Investors' claims are typical of the Class's claims.

### b. The Institutional Investors Will Fairly and Adequately Protect the Interests of the Class

Pursuant to Rule 23(a)(4), a representative party must demonstrate that it "will fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). "A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who will be able to prosecute the litigation vigorously." *Kraft*, 2019 WL 4958238, at *9 (brackets in the original and internal citations omitted).

Here, the Institutional Investors will fairly and adequately represent the interests of the Class. The Institutional Investors' interests are aligned with those of other Class members and are not antagonistic in any way, and there are no facts to suggest any actual or potential conflict of

9

interest or other antagonism between the Institutional Investors and other Class members. With a substantial financial interest in the litigation, the Institutional Investors have the resources and incentive to faithfully represent the Class and vigorously prosecute the litigation. *See Allscripts*, 2012 WL 5471110, at *5 (finding institutional investors were "committed to maximizing the net recovery for the class consistent with good faith advocacy").

Furthermore, the Institutional Investors have demonstrated their adequacy through their selection of Saxena White and Robbins Geller as Lead Counsel to represent the Class. Indeed, Saxena White investigated, developed, and filed the claims in the first action pending before this Court. As discussed more fully below, *see infra* Section III.D, Saxena White and Robbins Geller are highly qualified and experienced in the area of securities class action litigation. Accordingly, the Institutional Investors satisfy the Rule 23 adequacy requirement.

### 4. The Institutional Investors Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

The Institutional Investors are the paradigmatic lead plaintiff Congress sought to encourage to seek a leadership role in securities class actions through the enactment of the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("[I]ncreasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). As Congress noted in its PSLRA Statement of Managers Report, the PSLRA was designed "to increase the likelihood that institutional investors will serve as lead plaintiff[,]" in part because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting H.R. Rep. No. 104-327, at 24 (1994), *reprinted in* 1995 U.S.C.A.A.N. 730, 737); *see also Grobler v. Inotiv, Inc.*, No.

22-cv-45, 2022 WL 4181295, at *3 (N.D. Ind. Sept. 12, 2022) ("The PSLRA was enacted with the explicit hope that institutional investors, who tend to have by far the largest financial stakes in securities litigation, would step forward to represent the class and exercise effective management and supervision of the class lawyers.") (citation omitted).

Further, the Institutional Investors also have demonstrated their commitment to working cohesively in the prosecution of this litigation by executing the Joint Declaration. The Joint Declaration describes the backgrounds of the Institutional Investors and their significant relevant experience serving as fiduciaries in selecting and overseeing counsel in securities class action and other complex litigation. *See* Caringal Decl., Ex. C ¶¶ 2-4. The Joint Declaration also describes the cooperation of the Institutional Investors in this case, including protocols they have put in place to ensure informed decision-making. *See id*. ¶¶ 9-11. In addition, the Joint Declaration describes the common goals and interests of the Institutional Investors "in protecting and maximizing pension and retirement fund assets." *Id*. ¶ 7. As set forth in the Joint Declaration, in deciding to seek lead plaintiff appointment jointly, the Institutional Investors each determined that they could maximize the Class's recovery by sharing and combining resources and their perspectives as fiduciaries. *Id*. The Joint Declaration makes clear that the Institutional Investors appreciate the duties and responsibilities of a lead plaintiff pursuant to the PSLRA and are committed to maximizing the Class's recovery and ensuring the litigation is prosecuted as zealously and efficiently as possible. In addition, prior to filing their motion, representatives of the Institutional Investors held a conference call to formalize their oversight of this litigation and discuss the merits of the claims and their common goals in seeking to lead this litigation. *See id*. ¶ 8; *see also Allscripts*, 2012 WL 5471110, at *6 (appointing group that submitted a joint declaration attesting

11

that they conferred with one another and decided to move for lead plaintiff together after due consideration and deliberation) (internal quotations omitted).

Accordingly, the Institutional Investors have already demonstrated their ability to act collaboratively, their understanding of a lead plaintiff's obligations under the PSLRA, and their willingness and ability to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this litigation.

**D.**      **The Court Should Approve the Institutional Investors' Selection of Counsel**

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel for the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "In approving the lead plaintiff's selection of counsel, the court reviews the selection deferentially and will only intervene if it is necessary to protect the interests of the plaintiff class." *Christakis v. Fifth Third*, No. 20-cv-2176, 2020 WL 9720422, at *3 (N.D. Ill. June 29, 2020) (citation and internal quotation omitted). The Institutional Investors respectfully submit that their selection of Saxena White and Robbins Geller as Lead Counsel for the Class should be approved. Indeed, Saxena White and Robbins Geller have a long history of working together in the prosecution of securities class actions. For example, Saxena White and Robbins Geller served together as co-lead counsel in these actions: *Plymouth Cnty. Ret. Sys. v. Patterson Cos. Inc.*, No. 18-cv-871 (D. Minn.) ($63 million recovery); *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, No. 20-cv-856 (N.D. Ala.) ($28 million recovery). The firms are currently serving as co-lead counsel in *Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc.*, No. 22-cv-3023 (N.D. Cal.) (overcoming a motion to dismiss).

Saxena White has achieved substantial recoveries on behalf of investor classes when serving as lead counsel in securities class actions in this District and throughout the country.[5] Saxena White's track record in securities litigation includes: the $53.3 million recovery in *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04-cv-7644 (N.D. Ill.); the $210 million recovery for the investor class in *In re Wilmington Trust Sec. Litig.*, No. 10-cv-990 (D. Del.); the $135 million recovery in *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-cv-304 (D. Colo.); the $73 million recovery in *In re Rayonier Inc. Sec. Litig.*, No. 14-cv-1395 (M.D. Fla.); the $65 million recovery in *In re Apache Corp. Sec. Litig.*, No. 21-cv-575 (S.D. Tex.); the $55 million recovery in *Leventhal v. Chegg, Inc.*, No. 21-cv-0953 (N.D. Cal.) (pending final approval); the $50 million recovery in *In re HD Supply Holdings, Inc. Sec. Litig.*, No. 17-cv-2587 (N.D. Ga.); the $35 million recovery in *City of Hollywood Police Officers' Ret. Sys. v. Henry Schein, Inc.*, No. 19-cv-5530 (E.D.N.Y.); the $31.9 million recovery in *In re Perrigo Co. plc Sec. Litig.*, No. 19-cv-70 (S.D.N.Y.); and the $30 million recovery in *In re James River Holdings Ltd. Sec. Litig.*, No. 21-cv-444 (E.D. Va.).

Moreover, Saxena White achieved a $240 million settlement and significant corporate governance reforms in a derivative action on behalf of Wells Fargo & Company—the largest insurance-funded monetary recovery in a shareholder derivative settlement ever. *See In re Wells Fargo & Co. S'holder Deriv. Litig.*, No. 4:16-cv-05541-JST (N.D. Cal.). Saxena White also achieved a $180 million settlement in a derivative action involving a corruption and bribery scheme, one of the largest shareholder derivative settlements in history, in *Bloom v. Anderson (FirstEnergy Corp. Deriv. Litig.)*, No. 20-cv-4534 (S.D. Ohio). Indeed, Saxena White was

---

[5] For a detailed description of Saxena White's track record, resources, and attorneys, please see https://www.saxenawhite.com. A hard copy of the Firm's resume is available upon the Court's request, if preferred.

13

selected as Co-Lead Counsel for the *First Energy* matter not only for its "impressive" and "considerable track record[] of successfully prosecuting shareholder derivative actions," but also for its "diverse team" that "best reflects the plaintiffs' diversity and is best suited to act on their behalf." *FirstEnergy*, 2020 WL 6710429, at *8-9.

Robbins Geller possesses the experience and resources necessary to successfully prosecute this large and complex action for the benefit of the class. With more than 200 attorneys in offices nationwide, including within this District, Robbins Geller possesses substantial experience in complex securities litigation.[6] Courts in this District and throughout the nation have noted Robbins Geller's reputation for excellence, resulting in the appointment of Robbins Geller to lead roles in hundreds of securities class actions and other complex litigations. *See, e.g.*, *Hudson v. GoHealth, Inc.*, No. 1:20-cv-05593, ECF 61 (N.D. Ill. Dec. 10, 2020) (Coleman, J.) (appointing Robbins Geller attorneys as lead counsel in securities class action case); *Flynn v. Exelon Corp.*, No. 1:19-cv-08209, ECF 64 (N.D. Ill. July 21, 2020) (same). For example, in *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 1:02-cv-05893 (N.D. Ill.), Robbins Geller, as sole lead counsel, obtained a record-breaking settlement of $1.575 billion after 14 years of litigation, including a 6-week jury trial in 2009 that resulted in a securities fraud verdict in favor of the class. The settlement is the largest ever following a securities fraud class action trial, the largest securities fraud settlement in the Seventh Circuit, and the seventh-largest settlement ever in a post-PSLRA securities fraud case. Judge Alonso, who presided over the action, stated that "[Robbins Geller] performed a very high-quality legal work in the context of a thorny case in which the state of the law has been and is in flux. They achieved an exceptionally significant recovery for the class.

---

[6] For a detailed description of Robbins Geller's track record, resources, and attorneys, please see https://www.rgrdlaw.com. A hard copy of the Firm's resume is available upon the Court's request, if preferred.

14

And the Court agrees . . . that it was, in fact, a spectacular result for the class." *Household*, No. 1:02-cv-05893, ECF 2261 at 65 (N.D. Ill. Oct. 20, 2016).  Likewise, in *Silverman v. Motorola, Inc.*, No. 07-cv-4507, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012), *aff'd*, 739 F.3d 956 (7th Cir. 2013), Judge Amy J. St. Eve noted "[t]he representation that [Robbins Geller] provided to the class was significant, both in terms of quality and quantity." *Id.*  Additionally, Robbins Geller has obtained the largest securities fraud class action recovery in the Fifth, Sixth, Eighth, Tenth, and Eleventh Circuits.[7]

Accordingly, Saxena White and Robbins Geller have the skill and knowledge to prosecute this action effectively and expeditiously.  Thus, the Court may be assured by granting this Motion that the Class will receive the highest caliber of representation.

## IV.    CONCLUSION

For these reasons, the Institutional Investors respectfully request that the Court: (1) consolidate the Related Actions; (2) appoint the Institutional Investors to serve as Lead Plaintiff; and (3) approve the Institutional Investors' selection of Saxena White and Robbins Geller as Lead Counsel.

---

[7]  *See In re Enron Corp. Sec.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *In re UnitedHealth Grp. Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

Dated: April 23, 2025

Respectfully submitted,

/s/ Jennifer N. Caringal

**ROBBINS GELLER RUDMAN & DOWD LLP**
Jennifer N. Caringal (ILND-GB-286197)
Kenneth P. Dolitsky
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
jcaringal@rgrdlaw.com
kdolitsky@rgrdlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
James E. Barz (IL Bar # 6255605)
Frank A. Richter (IL Bar # 6310011)
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

**SAXENA WHITE P.A.**
Maya Saxena (*pro hac vice* forthcoming)
Joseph E. White, III (*pro hac vice* forthcoming)
Lester R. Hooker (Bar No. 32242)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

**SAXENA WHITE P.A.**
Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
mduenas@saxenawhite.com

*Proposed Lead Counsel for the Class*

16