EXHIBIT B

Case: 1:25-cv-01586 Document #: 26-2 Filed: 05/04/25 Page 2 of 30 PageID #:217

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KING P. COLES, II, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ATKORE, INC., WILLIAM E. WALTZ, DAVID P. JOHNSON, and JOHN M. DEITZER,<br><br>Defendants. | <u>CLASS ACTION</u><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff King P. Coles, II ("Plaintiff"), by and through his undersigned counsel, alleges the following based upon personal knowledge as to Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, the review and analysis of: (i) transcripts, press releases, news articles, lawsuits, reports, and other public statements issued by or concerning Atkore, Inc. ("Atkore" or the "Company"); (ii) research reports issued by financial analysts concerning the Company; (iii) reports and other documents filed publicly by Atkore with the United States Securities and Exchange Commission ("SEC"); and (iv) other available materials relating to Atkore. Plaintiff believes that substantial additional evidentiary support will exist for these allegations after a reasonable opportunity for discovery.

## I.   NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all purchasers of Atkore common stock from August 2, 2022 through February 3, 2025, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against Atkore, William E. Waltz, David P. Johnson, and John M. Deitzer, all of whom are collectively referred to as the "Defendants."

2.     Atkore is a leading manufacturer of electrical raceway products and tubes that are used in a variety of construction applications, including those made with a commonly used plastic material called polyvinyl chloride ("PVC"). The Company's products include, among other things, water pipes and electrical conduit pipes made with PVC ("PVC Pipes"). Atkore is a key player in the PVC Pipe industry, which was valued at more than $58 billion[1] in 2023.

_____

[1] *See* Introspective Market Research, *PVC Pipes Market*, *Global Newswire* (Feb. 20, 2025), available https://www.globenewswire.com/news-release/2025/02/20/3029418/0/en/PVC-Pipes-Market-To-Reach-USD-107-92-Billion-by-2032-Growing-at-CAGR-7-01-Finolex-Industries-Ltd-Polypipe-PLC-Avient-Corporation.html#:~:text=This%20in%2Ddepth%20analysis%20shows,7.01%20%25%20from%202024%20to%202032.

1

3. Atkore reports results in two segments: Electrical, and Safety & Infrastructure. The Electrical segment is the Company's most important segment as it includes the electrical conduits that are an essential product of the PVC Pipe market. In fact, Atkore holds a ~35% market share of PVC electrical conduits, the largest among its competitors, and is the only "pure-play" publicly traded PVC electrical conduit company.

4. The PVC Pipe industry has long been ripe for collusion because it is a commodity market dominated by Atkore and a consolidated group of competitors, all of which subscribe to the Oil Price Information Service ("OPIS"), a commodity pricing service run by Dow Jones that publishes various industry reports. In particular, OPIS publishes the "PetroChem Wire" which reports PVC Pipe prices.

5. Prior to and during the Class Period, Atkore was one of the primary participants in and beneficiary of a multi-year illegal price fixing scheme in the PVC Pipe market. Specifically, during the COVID-19 pandemic, shipping costs skyrocketed, eroding the profits of PVC Pipe manufacturers. Foreign PVC Pipe producers were no longer able to profit from sales in the United States, and they temporarily halted U.S. sales altogether due to these exorbitant shipping costs. The absence of foreign competition allowed Atkore and other U.S.-based PVC Pipe manufacturers to engage in a price-fixing scheme, in which they exchanged competitively sensitive data in a concerted effort to artificially inflate the price of their PVC Pipes.

6. Buoyed by the illegal scheme, Atkore reported unusually high profitability and margins during the Class Period. But rather than reveal that the source of Atkore's success was anticompetitive behavior, Defendants assured investors that Atkore would continue to deliver positive results in the post-COVID market.

7. The re-entry of foreign manufacturers into the US PVC Pipe industry after the pandemic, drove back down the prices of PVC Pipes, and caused the price fixing conspiracy to

2

unravel.  Rather than admit the truth, Defendants falsely described declining sales prices as "price normalization," and attributed lower prices to normal supply and demand dynamics.  Ultimately, the scheme was revealed through a series of disclosures including a short seller report citing evidence of collusion.  The Company also fell short of earnings expectations and cut guidance on several occasions.  Atkore's CFO and CAO departed abruptly, and at least seven private antitrust class actions were filed, naming Atkore as a primary defendant.  Most recently, the DOJ's Antitrust Division served a grand jury subpoena on Atkore.

8.      As the truth was revealed through this series of disclosures, Atkore's stock price declined over 60% erasing nearly **$4 billion** of the Company's market capitalization.

9.      As a result of Defendants' wrongful acts and omissions, and the large decline in the market value of the Company's common stock, Plaintiff and other class members have suffered significant losses and damages.

## II.      JURISDICTION AND VENUE

10.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa(c), and 28 U.S.C. § 1391(b).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District.  Atkore is headquartered this District and conducts substantial business here.  In addition, many of the acts alleged herein occurred in this District.

13.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mails, interstate telephone communications, and facilities of the national securities markets.

## III.     PARTIES

14.     Plaintiff King P. Coles, II purchased or otherwise acquired Atkore common stock during the Class Period, as set forth in the attached certification, and suffered damages as a result of the conduct alleged herein.

15.     Defendant Atkore is a Delaware company that manufactures electrical products and tubes that are used in a variety of construction applications.  Atkore is based in Illinois, and its common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "ATKR."

16.     Defendant William E. Waltz ("Waltz") served, at all relevant times, as Atkore's President and Chief Executive Officer ("CEO"), as well as member of the Board of Directors (the "Board").

17.     Defendant David P. Johnson ("Johnson") was the Company's Chief Financial Officer ("CFO") from August 2018 until his retirement on August 9, 2024, when he was succeeded by Defendant Deitzer.

18.     Defendant John M. Deitzer ("Deitzer") served as Vice President of Investor Relations from May 30, 2019 to February 1, 2024, when he moved into the role of Vice President of Finance in Atkore's Electrical segment.  On August 10, 2024, upon Defendant Johnson's retirement, Defendant Deitzer was named Atkore's CFO.

19.     Defendants Waltz, Johnson, and Deitzer are collectively referred to as the "Individual Defendants." During the Class Period, the Individual Defendants actively managed the

4

Company, overseeing its operations as well as finances, and made the materially false and misleading statements described below. The Individual Defendants, by virtue of their positions, had extensive knowledge about the core aspects of Atkore's financial and business operations. They were also deeply involved in deciding which disclosures would be made by the Company to its investors. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts that had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were materially false and/or misleading at the time they were made.

## IV.    SUBSTANTIVE ALLEGATIONS

20.    Atkore's plastic pipes and pipe conduits are made from PVC, a widely used synthetic plastic polymer.  PVC Pipes are commodity products, meaning that Atkore's competitors produce identical and interchangeable PVC Pipes.  Because they are identical products, commodities have long been the subject of price fixing conspiracies.  The significant market disruptions and price volatility caused by the COVID-19 pandemic have created greater risks of anticompetitive behavior, causing the DOJ to increase its oversight of commodities industries in recent years.

21.    Following the onset of the COVID-19 pandemic, and the resulting supply chain disruptions and spike in shipping costs, foreign PVC manufacturers were unable to sell PVC Pipes profitably in the United States.  Taking advantage of these obstacles, Atkore and other PVC Pipe manufacturers exchanged confidential and competitively sensitive data with each other to artificially inflate the prices of their PVC products during the Class Period in excess of functioning market conditions.

5

22.     As a result, Atkore was able to report staggering growth in earnings and margins during the relevant period.  In addition, the Company was able to inflate prices by over 86% from 2019 through 2023, despite nearly a 10% volume decline over that same time period.

23.     Further, from 2019 to 2023, Atkore's Electrical segment EBITDA grew more than threefold and its profit margins expanded from less than 20% for the time period from 2016 through 2019, to a staggering *38%* in 2023.  Similarly, Atkore's earnings per share ("EPS") skyrocketed from just $3 to $4 prior to the pandemic to *$19* in 2023, reflecting extraordinary and unprecedented growth.

## V.     DEFENDANTS' FALSE AND MISLEADING STATEMENTS

24.     The Class Period begins on August 2, 2022 when Atkore announced its third quarter fiscal 2022 financial results.  The Company reported net sales of $1.06 billion, up 24.4% versus the prior year, and net income per diluted share of $5.74, an increase of $2.10 compared to the prior year.  Speaking on the Company's performance, Defendant Waltz stated:

> *Atkore delivered year-over-year earnings growth and margin expansion in both Electrical and Safety & Infrastructure.* [2] Our performance demonstrates the strength of the Atkore Business System and our industry-leading solutions, as well as our team's continued dedication to supporting our customers. … *We are confident that we are well positioned to capitalize on future growth opportunities and deliver excellent service to our customers.*

25.     In addition, the Company noted that *"[t]he increase in net sales is primarily attributed to increased average selling prices across the Company's products of $244.0 million which were mostly driven by the PVC pipe and conduit product category within the Electrical segment."*

26.     During the Company's earnings call on that same day, Defendant Waltz was asked specifically about PVC pricing and demand:

---

[2] Emphasis in bold and italics is added.

6

Q: When you look at PVC pricing today, where does it stand relative to 12 months ago?

A: ***It's actually up compared to a year ago, and that's what's helping to drive margins.*** Now it is down that was your question slightly quarter-over-quarter, but we quite frankly anticipated that and that's why you kind of see the guide for Q4, the 3.05 to 3.35. ***But everything is working out exactly as we anticipated ironically other than, if anything, we had even stronger Q3 with pricing and every other initiative we're driving.***

Q: And the last one for me is just, are you seeing any meaningful changes on the PVC supply side?

A: No, I'm not aware of in the electrical conduit market. ***Again, my competitors and I don't talk, but no, I'm not aware of anything***

27. These statements were false and misleading. Defendants failed to disclose that the reason for Atkore's positive results in the third quarter fiscal 2022 was that it was engaged in a price fixing scheme with its United States-based competitors to artificially inflate the prices of PVC pipes. Thus, Atkore's reported success in the third quarter, which it attributed to "increased average selling prices" and increased margins, was the result of an anticompetitive price-fixing scheme and was unsustainable. Once the price-fixing scheme was exposed, Atkore was no longer able to maintain the artificially inflated prices of its PVC Pipes and its business suffered.

28. On November 20, 2022, Atkore announced its fourth quarter and full year fiscal 2022 financial results. Commenting on the results, Defendant Waltz stated, "***Atkore delivered record results for fiscal 2022***, as we continue to successfully execute on our strategic initiatives to expand our portfolio and deliver differentiated value to our customers." Atkore also issued full year fiscal 2023 guidance and a full year fiscal 2025 "goal" that day:

- **Fiscal 2023 Full Year** - The Company expects fiscal year 2023 Adjusted EBITDA to be in the range of $850-$950 million and Adjusted net income per diluted share to be in the range of $13.10 - $14.90.

- **Fiscal 2025 Full Year Goal** - The Company is providing a long-term fiscal 2025 Adjusted net income per diluted share target of greater than $18.00

7

29. Analysts immediately noted that the full year fiscal 2023 guidance came in above consensus estimates and that the full year fiscal 2025 goal "implies an impressive 13% earnings CAGR." Indeed, analysts were impressed at the Company's long-term "visibility."

30. During the Company's earnings call later that day, Defendant Waltz was asked what was "giving you confidence" in the guidance and goal. In response, Waltz stated, in pertinent part:

> I'm going to answer two sets of questions both back to this year and also the $18. There's multiple pass here. ***I always make the analogy of trying to drive through the city and assume you hit every green light. Here is one where we have planned in to go even if one thing does a little less, there's enough other strengths here.***
>
> So, Chris, a little bit, I'll be quite candid here on moving the guide up by $50 million was through both obviously $50 million, a 5%, 6% increase in EBITDA for the year, but also a confidence we have in the year. We could have just went to 800 to 900 and we each want to signal, guys, there's probably no risk on the downside here, and ***since David and I have been CEO and CFO, we have not missed this single earnings and we don't expect to hear it going forward.***

31. On this news, the price of Atkore's common stock increased $15.38 per share, or 15%, to close at $116.00 per share. An analyst at Royal Bank of Canada ("RBC") commented, "[w]e believe that this upside guidance sparked the +15% rally in the stock, as it once again quelled 'peak earnings' fears. Management also sounded ***exceptionally confident*** in the company's ability to hit these guidance targets."

32. Defendants' statements regarding the fourth quarter and full year fiscal 2022 financial results were false and misleading. Defendants failed to disclose that the positive results reported in the fourth quarter and full year fiscal 2022, as well as its full year fiscal 2023 guidance and a full year fiscal 2025 "goal," were attributable to a price fixing scheme with its United States-based competitors to artificially inflate the prices of PVC pipes. Thus, Atkore's "record results" were unsustainable. Once the price-fixing scheme was exposed, Atkore was no longer able to maintain the artificially inflated prices of its PVC Pipes and its business suffered.

33. On February 1, 2023, Atkore reported its first quarter fiscal 2023 financial results and continued to prime the market for outstanding results. According to an analyst at RBC, the

"biggest surprise" for the quarter was that "volumes [were] better than expected and [the] pricing [was] decline contained." In particular, while pricing was down during the quarter, the decline was buoyed "*by a lower than expected decline in Electrical.*" Despite being only one quarter into its fiscal year, Atkore increased its full year fiscal 2023 EPS guidance range to a range of $15.85 to $17.75, a 20% boost midpoint to midpoint and 16% above consensus. In addition, full year fiscal 2023 adjusted EBITDA guidance was also increased by $100 million, or 11%, from $950 to $1,050 million. Based on the increased guidance, RBC further added, "we expect that Atkore will need to boost its +$18 2025 EPS target later this year."

34. Atkore similarly increased its full year fiscal 2023 guidance over the next two quarters. First, on May 9, 2023, in connection with reporting its second quarter fiscal 2023 financial results, Atkore increased its estimate for full year fiscal 2023 adjusted EBITDA to a range of $1,015 million to $1,065 million, and adjusted net income per diluted share to a range from $17.45 to $18.35. Then, on August 8, 2023, when reporting its third quarter fiscal 2023 financial results, Atkore narrowed its estimate for full year fiscal 2023 adjusted EBITDA to a range of $1,020 million to $1,040 million (allegedly due to a change in accounting methodology related to solar credits), but increased its estimate for adjusted net income per diluted share to a range of $18.90 to $19.30.

35. On November 7, 2023, Atkore announced its fourth quarter and full year fiscal 2023 financial results. The Company's full year fiscal 2023 adjusted EBITDA and adjusted net income per diluted share both came in above the top end of its guidance range, respectively. Commenting on the results, Defendant Waltz noted that while there was some "price normalization, primarily in our PVC business," Atkore's profitability on both the adjusted EBITDA and EPS basis was "*much stronger than originally anticipated.*" With respect to pricing, he further noted that while "we continue to see PVC slowly go down," pricing "*still remains good, better than what we forecasted.*" That day, the Company also issued its full year fiscal 2024 guidance. For the year,

9

Atkore expected adjusted EBITDA to range from $900 to $950 million and adjusted net income per diluted share to range from $16.00 to $17.00. Atkore also reaffirmed its full year fiscal 2025 adjusted net income per diluted share target of "greater than $18.00."

36. These statements were false and misleading. Defendants failed to disclose that Atkore's positive results in the fourth quarter and full year fiscal 2023 were attributable to its participation in a price fixing scheme with its United States-based competitors to artificially inflate the prices of PVC pipes. Specifically, Waltz's statements regarding pricing and Atkore's profitability were false and misleading because these results were premised on prices boosted by an anticompetitive price-fixing scheme. Defendants knew that Atkore's success depended on the perpetuation of the scheme and was unsustainable otherwise.

37. On February 1, 2024, Atkore announced its first quarter fiscal 2024 financial results. Atkore reported adjusted EPS of $4.12, which beat the average analyst estimate. Addressing these results, Defendant Waltz stated, "***Atkore is off to a great start for fiscal 2024, with double digit organic volume growth in the first quarter driven by contributions across all key product areas***." Waltz added, "[g]iven our performance in the first quarter, we are raising our fiscal 2024 outlook for Adjusted EPS" to be in a range from $16.50 to $17.50. Atkore also reported increased sales volumes for the first quarter. According to Defendant Johnson, the increased sales volumes "were offset by [] continued pricing normalization," but he insisted that this was "within expectations" and that "business [was] back to normal."

38. These statements were false and misleading. Defendants failed to disclose that Atkore's positive results in the first quarter fiscal 2024 were attributable to its participation in a price fixing scheme with its United States-based competitors to artificially inflate the prices of PVC pipes. Specifically, Waltz's statement concerning Atkore's "great start for fiscal 2024" and "double digit organic volume growth" was false and misleading because the Company's success in this

10

quarter was attributable to an anticompetitive price-fixing scheme. Further, Waltz's statement that the Company is "raising [its] fiscal 2024 outlook for Adjusted EPS" based on the Company's "performance in the first quarter" was false and misleading because Atkore's positive "performance" was attributable to an anticompetitive price-fixing scheme. Defendants knew Atkore's success was unsustainable.

## VI. THE TRUTH IS REVEALED

39. On May 7, 2024, in connection with the release of the Company's second quarter fiscal 2024 financial results, Atkore announced that it was lowering its full year fiscal 2024 projections "due to several factors impacting our [High-Density Polyethylene ("HDPE")] and solar-related initiatives." Specifically, the Company lowered its full year fiscal 2024 adjusted EBITDA from a range of $900 million to $950 million to a range of $850 million to $900 million.

40. While Atkore attributed its guidance cut to "issues with HDPE and solar-related initiatives," the Company did note that the "pricing environment could be challenged in the second half of 2024," a fact that did not go unnoticed by investors. Notwithstanding the negative news, Atkore still reaffirmed its full year fiscal 2025 adjusted net income per diluted share target of "greater than $18.00" on the Company's earnings call that day.

41. On this news, the price of the Company's common stock declined $22.06 per share, or 12.5%, to close at $154.34 per share.

42. On July 23, 2024, after the market closed, Atkore announced that Defendant Johnson had abruptly "submitted his resignation as Vice President, Chief Financial Officer and Chief Accounting Officer ("CAO"), effective close of business on August 9, 2024." Atkore also announced that upon Johnson's departure, Defendant Deitzer would take over as the Company's CFO and James Alvey would assume the role of CAO.

11

43.     On this news, the price of the Company's common stock declined $12.37 per share, or 8.5%, to close at $132.63 on July 24, 2024.

44.     On July 26, 2024, ManBear, a short seller that emerged in 2016 to expose price fixing in the chicken industry, issued a report which asserted that the manufacturers of PVC Pipes in the electrical conduit and municipal water pipe markets have been engaging in price fixing. The ManBear Report asserted, among other things, that "the apparent price fixing has resulted in massively inflated pipe prices and converter margins." It noted that the prices "appear to defy economic logic," remaining at extremely elevated levels despite normalized supply chains, normalized input costs (resin), and weak demand. Indeed, according to OPIS, PVC municipal water pipe and electrical conduit pipe prices remain at 4.7x, and 2.7x, above pre-COVID levels, respectively. The ManBear Report cited an example where, "a few days after communicating a very specific price increase effort, all major conduit converters raised prices with effectively identical new price sheets in every region."

45.     The ManBear Report also observed that Atkore's core electrical segment EBITDA grew 3.4x from 2019 to 2023 as reported prices increased 86% and margins expanded from 20% to 38%. It also flagged the fact that Atkore management claimed that the elevated margins were sustainable which caused the Company to guide FY25 EPS of "at least $18" which was "unusual visibility for a commodity company."

46.     On August 6, 2024, Atkore reported the Company's third quarter fiscal 2024 financial results and revised its full year fiscal 2024 guidance. Specifically, Atkore reported adjusted EPS that missed the average analyst estimate. In addition, the Company adjusted downward its estimate for full year fiscal 2024 adjusted EBITDA to a range of $772 million to $782 million, and adjusted net income per diluted share to a range of $14.30 to $14.52. In discussing these results, Defendant Waltz stated, "[t]he third quarter proved to be more challenging than we

12

initially anticipated due to a limited increase in demand from the summer construction season and an *overall soft pricing environment across most of our Electrical business.*" Waltz added, "[w]e anticipate these trends to continue into the fourth quarter and next year, and we've updated our expectations and outlooks accordingly." During the Company's earnings call later that day, Defendant Waltz provided some additional color on pricing stating, "*[p]ricing was softer than expected due to the slower end markets, particularly for our PVC conduit business* and higher concentration of large projects where pricing tends to be more competitive."

47.     On this news, the price of the Company's common stock declined $17.41 per share, nearly 15%, to close at $101.05 per share.

48.     On August 23, 2024, the first of several antitrust class action lawsuits[3] was filed against Atkore and its competitors alleging that these "Converter Defendants" (i.e., the leading manufacturers of PVC pipes in the United States, including Atkore)[4] conspired and combined to fix, raise, maintain, and stabilize the price of PVC municipal water pipes and PVC electrical conduit pipes in the United States. The now-consolidated action (the "Antitrust Action") seeks injunctive relief under Section 1 of the Sherman Act and treble damages under the antitrust laws, as well as damages under other state laws.

49.     As is common in anticompetitive conspiracies, there is a single source of information at the center of the PVC Pipe price fixing conspiracy: OPIS. OPIS allowed the Converter Defendants to discuss and signal their pricing activities, access standardized pricing data from their competitors, and extract artificially inflated profits from their customers. According to the Antitrust Action, OPIS not only facilitated the private and non-public sharing of information,

_____

[3] All of the pending antitrust complaints have been consolidated under the following caption: *In re: PVC Pipe Antitrust Litigation*, Docket No. 1:24-cv-07639 (N.D. Ill.).

[4] The manufacturers of PVC Pipes are called converters. In the antitrust litigation, the Converter Defendants are: Atkore, Cantex, Inc., Diamond Plastics Corporation, IPEX USA LLC, JM Eagle, National Pipe and Plastics, Inc., Otter Tail Corporation, Prime Conduit, Inc., Southern Pipe, Inc., and Westlake Corporation.

but it also repeatedly served as a communication vehicle among the Converter Defendants, allowing them to communicate their pricing plans in order to maintain the price-fixing conspiracy.

50.     On February 4, 2025, Atkore reported disappointing first quarter fiscal 2025 financial results and also lowered its full year fiscal 2025 outlook.  Notably, in the Electrical segment, net sales fell by $128.3 million, or 21.6% (year-over-year), to $465.4 million. Atkore reported that "*[t]he decrease in net sales is primarily attributed to decreased average selling prices* of $95.7 million and decreased sales volume of $33.3 million."  In addition, adjusted EBITDA decreased by $112.0 million, or 54.8% (year-over-year), to $92.4 million and adjusted EBITDA margin decreased to 19.9% compared to 34.4% for the first quarter fiscal 2024.  The Company reported that "*[t]he decreases in Adjusted EBITDA and Adjusted EBITDA margin were largely due to the decreases in average selling prices* and sales volume."

51.     With respect to the full year fiscal 2025 outlook, the Company lowered its estimate for adjusted EBITDA to a range of $375 million to $425 million, and lowered its estimate for adjusted net income per diluted share to a range of $5.75 to $6.85, which missed analysts' estimates. During the Company's earnings call later that day, Defendant Deitzer disclosed that Atkore's "plastic pipe and conduit product category declined mid-single digits during the quarter[,]" compared to "high single digits in the prior year." During that same call, Deitzer attributed the guidance reduction to the forthcoming poor performance of Atkore's PVC business, stating, "*I'd say roughly $75 million or 3/4 of that is on the PVC side.*"  Analysts immediately reacted. For example, analysts at RBC reported that Atkore's newly issued guidance "marks the fourth consecutive quarter of a guidance cut . . . and implies more pricing cuts are needed to protect [Atkore's] market share," adding that "[e]ssentially all pricing gains since COVID have been given back."

14

52.     On this news, the price of the Company's common stock declined $15.59 per share, or 19.5%, to close at $64.13 per share.  From May 6, 2024 through February 4, 2025, as the fraudulent scheme was slowly disclosed, Atkore's stock price dropped $112.27 per share, or 64%, from a closing price of $176.40 per share to $64.13 per share, erasing nearly $4 billion in the Company's market capitalization.

## VII.     POST-CLASS PERIOD DISCLOSURES

53.     On February 14, 2025, Atkore filed a Form 8-K with the SEC which stated that on February 13, 2025, the Company had received a DOJ grand jury subpoena calling for the "production of documents relating to the pricing of the Company's PVC pipe and conduit products."

## VIII.  SCIENTER

54.     Defendants acted with scienter in that they knew, or recklessly disregarded, that the public documents and statements they issued or disseminated to the investing public during the Class Period were materially false or misleading. Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as well as actions intended to manipulate the market price of Atkore common stock, as primary violations of the federal securities laws.  Defendants, by virtue of their receipt of information reflecting the true facts regarding Atkore, their control over, receipt, and/or modification of Atkore's materially false and misleading statements, were active and culpable participants in the fraudulent scheme alleged herein.

55.     Defendants knew or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetuated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants. Given their positions with Atkore, the Individual

15

Defendants controlled the contents of Atkore's public statements during the Class Period. The Individual Defendants were each provided with, or had access to, the statements alleged herein to be false and misleading prior to, or shortly after their issuance, and had the ability as well as the opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were false and misleading. As a result, each of the Defendants is responsible for the accuracy of Atkore's corporate statements, and is, therefore, responsible and liable for the representations contained therein.

## IX. LOSS CAUSATION/ECONOMIC LOSS

56. Plaintiff and other class members were damaged as a result of Defendants' fraudulent conduct as alleged herein. During the Class Period, Defendants engaged in a scheme to deceive investors by issuing a series of material misrepresentations and omitting material facts, trends, commitments, and uncertainties required to be disclosed relating to Atkore's operations, business, financial performance, and future prospects.

57. As a direct result of Defendants' scheme, misrepresentations of material fact, and omissions of material fact, the price of Atkore's common stock was artificially inflated throughout the Class Period.

58. Class members unknowingly and in reliance on Defendants' materially false or misleading statements and/or omissions purchased Atkore common stock at artificially inflated prices on the NYSE. But for Defendants' misrepresentations, omissions, and fraudulent scheme, Plaintiff and other class members would not have purchased Atkore common stock at the artificially inflated prices at which it traded during the Class Period.

16

59. The truth regarding Defendants' fraud was revealed through corrective disclosures made between May 7, 2024 and February 4, 2025. In response to these corrective disclosures, the price of Atkore's stock fell precipitously as the artificial inflation caused by Defendants' unlawful conduct was removed from Atkore's stock price.

60. This decline in Atkore's stock price following the corrective disclosures is directly attributable to the market absorbing information that disclosed the falsities in or misleadingly omitted from Defendants' material misrepresentations and omissions.

61. Plaintiff and other class members suffered economic losses as the price of Atkore's stock fell in response to the corrective disclosures. It was foreseeable that such disclosures would cause Atkore's stock price to decline. Thus, Defendants' wrongful conduct, as alleged herein, directly and proximately caused the damages suffered by Plaintiff and other class members.

## X. PLAINTIFF IS ENTITLED TO A PRESUMPTION OF RELIANCE

62. At all relevant times, the market for shares of Atkore common stock was an efficient market by virtue of the following reasons, among others: (i) shares of Atkore common stock met the requirements for listing, was actually listed, and actively traded on the NYSE; (ii) according to the Company's Form 10-K for the fiscal year ended September 30, 2024, Atkore had 34,902,992 outstanding shares of common stock as of November 19, 2024, demonstrating a broad market for Atkore common stock; (iii) as a registered and regulated issuer of securities, Atkore filed periodic reports with the SEC and NYSE, in addition to the Company's frequent voluntary dissemination of information; (iv) Atkore regularly communicated with investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services, the Internet, and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services; (v) Atkore was followed by securities analysts employed by major brokerage

17

firms, who wrote reports that were distributed to the customers of their respective brokerage firms and made such reports publicly available; (vi) the material misrepresentations and omissions alleged herein would tend to induce a reasonable investor to misjudge the value of Atkore common stock; and (vii) without knowledge of the misrepresented or omitted facts, Plaintiff and the members of the class purchased or otherwise acquired Atkore common stock between the time Defendants made the material misrepresentations and omissions and the time the truth was revealed, during which period the price of Atkore's common stock was artificially inflated as a result thereof.

63. The market for Atkore common stock promptly digested current information regarding Atkore from all publicly available sources and reflected such information in the price of the Company's common stock. Under these circumstances, all purchasers of Atkore common stock during the Class Period who relied upon the integrity of the market price of Atkore common stock, including Plaintiff, suffered similar injury through their purchase of Atkore common stock at artificially inflated prices, and a presumption of reliance under the fraud-on-the-market doctrine applies.

## XI. THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE ARE INAPPLICABLE

64. The Private Securities Litigation Reform Act's statutory safe harbor and the bespeaks caution doctrine applicable to forward-looking statements under certain circumstances do not apply to any of the materially false or misleading statements alleged herein.

65. None of the statements complained of herein were forward-looking statements. Rather, each was a historical statement or statement of purportedly current facts and conditions at the time each statement was made.

66. To the extent that any materially false or misleading statement alleged herein, or any portion thereof, can be construed as forward-looking, such statement was not accompanied by meaningful cautionary language identifying important facts that could cause actual results to differ

materially from those in the statement or portion thereof. As set forth above, given the then-existing facts contradicting Defendants' statements, any generalized risk disclosures made by Defendants do not insulate Defendants from liability for their materially false or misleading statements or omissions.

67. To the extent that the statutory safe harbor applies to any materially false or misleading statement alleged herein, or any portion thereof, Defendants are liable for any such materially false or misleading forward-looking statement because at the time such statement was made the speaker knew the statement was materially false or misleading, or the statement was authorized and approved by an executive officer of Atkore who knew that the forward-looking statement was materially false or misleading.

## XII. CLASS ACTION ALLEGATIONS

68. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), individually and on behalf of a Class consisting of all persons and entities that purchased or otherwise acquired the publicly traded common stock of Atkore between August 2, 2022 and February 3, 2025.

69. Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of Atkore, members of Atkore's Board, and members of their immediate families (as defined in 17 C.F.R. § 229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; (iv) any entity in which Defendants have or had a controlling interest; and (v) any affiliate of Atkore.

70. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Atkore's securities were actively traded on the NYSE. While the exact number of class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery from Defendants, Plaintiff believes that there are at least

19

hundreds, if not thousands, of members in the proposed Class. Class members may be identified from records maintained by Atkore or its transfer agent and may be notified of the pendency of this action by mail using a form of notice customarily used in securities class actions.

71.     Plaintiff's claims are typical of all other class members' claims, as all class members are similarly affected by Defendants' wrongful conduct in violation of the federal securities laws complained of herein.

72.     Plaintiff will fairly and adequately protect the interests of the class members and has retained counsel competent and experienced in class and securities litigation.

73.     Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual class members. Among the questions of law and fact common to the class are: (i) whether Defendants' acts and omissions as alleged herein violated the federal securities laws; (ii) whether Defendants' statements to the investing public during the Class Period misrepresented or omitted material facts about Atkore's operations, business, performance, and future prospects; (iii) to what extent the class members have sustained damages; and (iv) the proper measure of such damages.

74.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable. Furthermore, as the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for class members to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## XIII.    CAUSES OF ACTION

### COUNT I

**Violation of Section 10(b) of the Exchange Act**
**Against All Defendants**

20

75.     Plaintiff incorporates by reference and realleges all preceding paragraphs as if fully set forth herein.  This claim is brought against Defendants pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

76.     During the Class Period, Defendants used the means and instrumentalities of interstate commerce, the United States mails, and the facilities of a national securities exchange to make materially false or misleading statements and omissions of material fact alleged herein to: (i) deceive the investing public, including Plaintiff; (ii) cause the market price of Atkore common stock to trade above its true value; and (iii) cause Plaintiff as well as other class members to purchase or otherwise acquire Atkore common stock at artificially inflated prices that did not reflect the stock's true value during the Class Period.  In furtherance of their unlawful scheme, plan, or course of conduct, Defendants took the actions alleged herein.

77.     While in possession of material adverse non-public information, Defendants, individually and in concert, directly or indirectly, by the use of means and instrumentalities of interstate commerce, the United States mails, and the facilities of a national securities exchange: (i) employed devices, schemes, and artifices to defraud; (ii) made false or misleading statements of material fact and/or failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Atkore common stock, in violation of Section 10(b) and Rule 10b-5.  Defendants are alleged as primary participants in the wrongful conduct alleged herein.

78.     Defendants acted with knowledge or a reckless disregard for the truth of the materially misrepresented and omitted facts alleged herein in that they failed to disclose such facts even though such facts were readily available to them, if not known.  Defendants' material

21

misrepresentations and omissions were made knowingly and/or recklessly for the purpose and effect of concealing the truth regarding Atkore's operations, business, performance, and future prospects from the investing public and supporting the artificially inflated price of its common stock.

79.     As set forth above, the dissemination of the materially false or misleading information and failure to disclose material facts artificially inflated or maintained artificial inflation already incorporated in the market price of Atkore common stock during the Class Period. Plaintiff and other class members purchased or otherwise acquired Atkore common stock during the Class Period at artificially inflated prices in direct or indirect reliance on: (i) the materially false or misleading statements made by Defendants; (ii) the efficiency and integrity of the market in which the Company's common stock trades; and (iii) the absence of material adverse information that Defendants knew of or recklessly disregarded but did not publicly disclose.  As the previously misrepresented and/or concealed material facts eventually emerged, the price of Atkore common stock substantially declined, causing losses to Plaintiff and other class members.

80.     At the time of the material misrepresentations and omissions alleged herein, Plaintiff and other class members were not aware of their falsity and believed them to be true.  Had Plaintiff and other class members known the relevant truth regarding Atkore's financial results, operations, business, and prospects, which was misrepresented and/or concealed by Defendants, Plaintiff and other class members would not have purchased or otherwise acquired Atkore common stock at artificially inflated prices.

81.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other class members suffered damages in connection with their transactions in the Company's common stock during the Class Period.

22

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

82.     Plaintiff incorporates by reference and realleges all preceding paragraphs as if fully set forth herein. This claim is brought against the Individual Defendants pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

83.     Prior to and during the Class Period, the Individual Defendants, by virtue of their high-level positions, were privy to, and monitored, confidential and proprietary information concerning Atkore, its business, operations, performance, and future prospects, including its compliance with applicable federal, state, and local laws and regulations.

84.     In their respective roles, the Individual Defendants had regular access to non-public information about Atkore's business, operations, performance, and future prospects through access to internal corporate documents and information, conversations, and connections with other of Atkore's corporate officers and employees, attendance at management meetings and meetings of the Company's Board of Directors and committees thereof, as well as reports and other information provided to them in connection therewith.

85.     Each of the Individual Defendants was a controlling person of Atkore within the meaning of Section 20(a), as alleged herein. By virtue of their high-level positions, their participation in or awareness of the Company's day-to-day operations and finances, and/or knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants each had the power and authority to influence and control, and did influence and control, directly or indirectly, the day-to-day decision-making of the Company, including the content and dissemination of the statements Plaintiff alleges were materially false and misleading.

23

86. Each of the Individual Defendants is liable as a primary participant in a wrongful scheme and course of business that operated as a fraud and deceit on purchasers of Atkore common stock during the Class Period, which included the dissemination of materially false or misleading financial statements and statements (both affirmative statements and statements rendered misleading because of material omissions) set forth above. The scheme: (i) deceived the investing public regarding Atkore's operations and the true value of Atkore's common stock; and (ii) caused Plaintiff and other class members to purchase Atkore common stock at artificially inflated prices, which plummeted in value when the truth concerning Atkore's business, operations, performance, and future prospects was revealed.

87. The Individual Defendants were provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings, and other statements Plaintiff alleges were materially misleading prior to and/or shortly after these statements were issued and had the ability and ultimate authority to prevent the issuance of these statements or cause these statements to be corrected. In particular, the Individual Defendants maintained direct and supervisory involvement in the day-to-day operations of the Company and therefore had, or are presumed to have had, the power to control or influence the particular public statements or omissions giving rise to the securities violations as alleged herein and exercised the same.

88. As set forth above, Defendants violated Sections 10(b) and Rule 10b-5 by their acts and omissions as alleged herein. By virtue of the Individual Defendants' status as controlling persons and their respective participation in the underlying violations of Section 10(b) and Rule 10b-5, the Individual Defendants are liable under Section 20(a). As a direct and proximate result of the Individual Defendants' culpable conduct, Plaintiff and other class members suffered damages in connection with their transactions in Atkore's common stock during the Class Period.

24

## XIV.   PRAYER FOR RELIEF

 **WHEREFORE,** Plaintiff prays for relief and judgment, including:

1.      Certification of this action as a class action;

2.      Awarding compensatory damages against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon, as allowed by law;

3.      Awarding Plaintiff costs and expenses incurred in this action, including reasonable counsel fees and expert fees; and

4.      Awarding such other and further relief as may be just and proper.

## XV.   JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: March 14, 2025                    Respectfully submitted,

                                        **GRANT & EISENHOFER, P.A.**

                                        */s/ Lisa B. Weinstein*
                                        Lisa B. Weinstein
                                        30 N. LaSalle Street, Suite 2350
                                        Chicago, IL 60602
                                        Telephone: (312) 610-5350
                                        Facsimile: (312) 214-0001
                                        lweinstein@gelaw.com

                                        Caitlin M. Moyna (*pro hac vice* forthcoming)
                                        Karin E. Fisch
                                        Vincent J. Pontrello
                                        485 Lexington Avenue
                                        New York, NY 10017
                                        Telephone: (646) 722-8500
                                        Facsimile: (610) 722-8501
                                        cmoyna@gelaw.com
                                        kfisch@gelaw.com
                                        vpontrello@gelaw.com

                                        *Counsel for Plaintiff*

25

## CERTIFICATION OF KING P. COLES, II

I, King P. Coles, II, certify pursuant to 28 U.S.C. § 1746 and 15 U.S.C. § 78u-4 as follows:

1.    I have fully reviewed the Class Action Complaint for Violations of the Federal Securities Laws and authorize its filing.

2.    I did not purchase or acquire Atkore, Inc. common stock at the direction of counsel or in order to participate in any private action.

3.    I am willing to serve as a representative party on behalf of the proposed class, including providing testimony at deposition and trial, if necessary.

4.    Attached as Schedule A to this certification is a list of my transactions during the relevant period in Atkore, Inc. common stock that is the subject of this action.

5.    During the three-year period preceding the date of this certification, I have not sought to serve as a representative party on behalf of a class asserting claims under the federal securities laws of the United States.

6.    I will not accept any payment for serving as a representative party on behalf of the proposed class beyond my pro rata share of any recovery, except as ordered or approved by the Court.


[signature page follows]

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and accurate.

Executed __03 / 12 / 2025_____.

By:

_____
King P. Coles, II

# Atkore, Inc. – Schedule A

**King P. Coles, II**

| | |
|---|---|
| **Cusip:** | 047649108 |
| **Ticker:** | ATKR |
| **Class Period:** | August 2, 2022 through February 3, 2025 |

**Beginning Holdings**:    0 shares

| Purchases | | | | Sales | | |
|---|---|---|---|---|---|---|
| **Trade Date** | **Quantity** | **Price** | | **Trade Date** | **Quantity** | **Price** |
| 07/03/2024 | 65 | $134.80 | | 12/04/2024 | 111 | $93.15 |
| 08/08/2024 | 46 | $97.96 | | | | |