# Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| WESTCHESTER PUTNAM COUNTIES HEAVY & HIGHWAY LABORERS LOCAL 60 BENEFITS FUND, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ATKORE INC., WILLIAM E. WALTZ JR., JOHN M. DEITZER, and DAVID P. JOHNSON,<br><br>Defendants. | CASE NO.:<br><br><br>**DEMAND FOR A JURY TRIAL** |

**CLASS ACTION COMPLAINT**
**FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefits Fund ("Plaintiff"), by and through counsel, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Atkore Inc. ("Atkore" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, and conference calls concerning Defendants' public statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants (defined below).

1

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of all persons and entities that purchased Atkore common stock between February 1, 2024 and February 3, 2025, inclusive (the "Class Period"), against Atkore and certain of its officers and executives (collectively, "Defendants"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2. Based in Harvey, Illinois, Atkore purports to be a leading manufacturer of electrical, safety, and infrastructure products. Among other products, the Company manufactures polyvinyl chloride ("PVC") water pipes and electrical conduit pipes (together, "PVC Pipes"). PVC is a widely used synthetic plastic polymer.

3. During the COVID-19 pandemic, shipping costs skyrocketed. As a result, foreign PVC Pipe manufacturers found themselves unable to profitably sell PVC Pipes in the United States. Atkore and other U.S.-based PVC Pipe manufacturers took advantage of the absence of foreign competition, exchanging confidential and competitively sensitive data in order to artificially inflate PVC Pipe pricing.

4. Leading up to the Class Period, shipping prices returned to normal levels following the pandemic, which led foreign PVC Pipe manufacturers to gradually re-enter the market. Beginning in late 2022, as the sales price of PVC Pipes began declining, Atkore informed investors that "part of the pricing outperformance that we've enjoyed over the past several years has started to normalize."

5. Throughout the Class Period, Defendants repeatedly claimed that the post-pandemic PVC Pipe price declines were based only on normal supply and demand competition and assured the market that Atkore would continue to be successful in a competitive post-COVID market. For instance, on February 1, 2024, the first day of the Class Period, Atkore reported

2

increased sales volumes for the first quarter of its fiscal year 2024.  According to CFO Johnson, the increased sales volumes "were offset by [] continued pricing normalization," but CFO Johnson insisted that this was "within expectations" and that "business [was] back to normal."  As Atkore's PVC Pipe pricing continued to degrade, the Company further assured investors that any "price normalization" reflected "competitive dynamics" and maintained that the Company enjoyed a "price premium" over its competition due to its "reputation," "quality," and "ability to ship."

6.      On July 24, 2024, the short seller firm ManBear published a short report titled "Pipe Price Fixing" (the "Short Report").  The Short Report accuses Atkore and three other PVC Pipe manufacturers of using the commodity pricing service OPIS to coordinate pricing actions, thereby fixing PVC Pipe prices.  The Short Report asserts that the price fixing scheme "resulted in massively inflated" PVC Pipe prices that "defy economic logic."  The Short Report further notes that PVC Pipe prices "remain at extremely elevated levels despite normalized supply chains, normalized input costs (resin), and weak demand," with "PVC municipal [water pipe] and conduit prices" holding "4.7x and 2.7x above pre-Covid levels, respectively."  Just two weeks later, during an earnings call in connection with Atkore's financial results for third quarter of fiscal year 2024, CEO Waltz dismissed the allegations in the Short Report, stating, "I'm going to claim that report is unsubstantiated from the conclusions it tries to make."

7.      Within months of Defendants' assurances that the price-fixing allegations were "unsubstantiated," Atkore was named as a defendant in multiple civil antitrust lawsuits.  *See*, *e.g.*, *In re PVC Pipe Antitrust Litig.*, No. 24-cv-7639 (N.D. Ill. filed Aug. 23, 2024).  The actions allege that Atkore and other U.S.-based PVC Pipe manufacturers conspired to artificially inflate the price of PVC Pipes by exchanging competitively sensitive business information, including information regarding future PVC Pipe pricing and sales through OPIS.

8. Unbeknownst to investors, Defendants had failed to disclose that: (1) Atkore engaged in an anticompetitive price-fixing scheme that artificially inflated the price of PVC Pipes; (2) Atkore reaped significant, unsustainable financial benefits from its anticompetitive conduct; (3) as Atkore's price-fixing scheme was exposed, the Company and its price-fixing co-conspirators were no longer able to artificially inflate the price of PVC Pipes, resulting in a substantial decrease in the price of PVC Pipes; (4) Atkore's business and operations were negatively impacted; and (5) as a result, Defendants' positive statements Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

9. The truth was revealed before markets opened on February 4, 2025, when Atkore announced its financial results for the first quarter of fiscal year 2025, reporting net sales of $661.6 million—below analysts' estimates of $680.7 million. Additionally, Atkore significantly reduced its adjusted earnings per share ("EPS") and adjusted earnings before interest, taxes, depreciation and amortization ("EBITDA") guidance for the rest of fiscal year 2025, which also missed analysts' estimates.

10. During the corresponding earnings call that same day, CFO Deitzer disclosed that Atkore's "plastic pipe and conduit product category declined mid-single digits during the quarter[,]" compared to "high single digits in the prior year." During that same call, CFO Deitzer attributed the guidance reduction to the forthcoming poor performance of Atkore's PVC business, stating, "I'd say roughly $75 million or 3/4 of that is on the PVC side."

11. Analysts immediately reacted. For example, RBC Capital analysts reported that Atkore's newly issued guidance "marks the fourth consecutive quarter of a guidance cut . . . and implies more pricing cuts are needed to protect [Atkore's] market share," adding that "[e]ssentially all pricing gains since COVID have been given back." Similarly, Roth Capital analysts lowered

4

estimates for fiscal years 2025 and 2026, citing "acceleration in pricing pressure for PVC" and "margin compression."

12. On this news, the price of Atkore common stock fell $15.59 per share, or nearly 20%, from a closing price of $79.72 per share on February 3, 2025, to a closing price of $64.13 per share on February 4, 2025.

13. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in market value of the Company's common stock when the truth was disclosed, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

16. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this Judicial District, as Atkore is headquartered in this Judicial District.

17. In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

18.     Based in Hawthorne, New York, Plaintiff provides pension and other benefits for union members.  Plaintiff is responsible for the retirement income of these employees and their beneficiaries.  Plaintiff manages approximately $300 million in assets for the benefit of more than 1,500 participants.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased Atkore common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

19.     Defendant Atkore is incorporated under the laws of Delaware with its principal executive offices located in Harvey, Illinois.  Atkore's common stock trades on the New York Stock Exchange (the "NYSE") under the ticker symbol "ATKR."

20.     Defendant William E. Waltz ("CEO Waltz") has served as the Company's President, Chief Executive Officer ("CEO"), and Director since September 2018.

21.     Defendant John M. Deitzer ("CFO Deitzer") has served as the Company's Vice President ("VP") and Chief Financial Officer ("CFO") since August 9, 2024.  Prior to his promotion to CFO, Deitzer served as VP of Finance in the Company's electrical business unit.

22.     Defendant David P. Johnson ("CFO Johnson") served as the Company's VP, CFO and Chief Accounting Officer from August 2018 to August 9, 2024.

23.     Defendants Waltz, Deitzer, and Johnson (collectively, the "Individual Defendants"), because of their positions with Atkore, possessed the power and authority to control the contents of, *inter alia*, Atkore's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of Atkore's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity

6

to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false and misleading statements pleaded herein.

24.     Atkore and the Individual Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background**

25.     Headquartered in Harvey, Illinois, Atkore is a leading manufacturer of electrical, safety, and infrastructure products. The Company offers products used in the construction of electrical power systems, including metal electrical conduit and fittings, plastic pipe conduit and fittings, electrical cable and flexible conduit, and plastic pipes for water systems.

26.     Notably, Atkore's plastic pipes and pipe conduits are made from PVC, one of the most widely used plastic polymers. Commodity products like PVC Pipes have been under heightened scrutiny as the U.S. Department of Justice ("DOJ") has increased its efforts to examine anticompetitive practices in supply chains following disruptions and price surges attributed to the COVID-19 pandemic.

27.     As the cost of shipping skyrocketed during the COVID-19 pandemic, foreign PVC Pipe manufacturers could no longer profitably sell their PVC products in the United States. Because foreign competitors exited the market, Atkore and its U.S.-based competitors were able to starkly raise the pricing of PVC Pipes, generating historic profit margins. For example, Atkore

7

achieved a record net income of $913.4 million for its fiscal year 2022—representing an increase of $325.6 million year-over-year.

28. Leading up to the Class Period, shipping prices returned to normal levels following the pandemic, which led foreign PVC Pipe manufactures to gradually re-enter the market. Beginning in late 2022, as the sales price of PVC Pipes began declining, Atkore informed investors that "part of the pricing outperformance that we've enjoyed over the past several years has started to normalize."

**Defendants' Materially False and Misleading Statements**

29. The Class Period begins on February 1, 2024 when, before markets opened, Atkore issued a press release announcing its financial results for the first quarter of its fiscal year 2024, ended December 29, 2023. In the press release, Atkore reported net sales of $798.5 million—down 4.2% year-over-year and attributed to, among other things, "decreased average selling prices across the Company's products of $130.4 million as a result of expected pricing normalization."

30. During the accompanying earnings call held that same day, CFO Johnson explained that volume growth was offset by "price normalization," stating,

> I'm pleased by our strong volume performance in the quarter with organic volumes up over 13%. These gains were offset by the continued pricing normalization, but this impact was within expectations and aligns with the pricing trends we have been discussing for the past several years.

31. During that same earnings call, a Loop Capital Market analyst asked whether there were "any changes in the competitive landscape." In response, CEO Waltz claimed there was "[n]othing of significance," and "[t]here's always minor players that try to enter noise level things, so somebody importing a product because of things." In response to the same question, CFO Johnson added, "there are a lot of reasons why [] we do well and that the competitive landscape is fairly stable year-over-year."

8

32. On May 7, 2024, Atkore issued a press release announcing the Company's financial results for the second quarter of its fiscal year 2024, ended March 29, 2024. In the press release, Atkore reported that "[n]et sales decreased by $103.0 million, or 11.5%" year-over-year, and the Company once again attributed the decrease, in part, to "decreased average selling prices across the Company's products . . . as a result of expected pricing normalization."

33. During the related earnings call held that same day, CFO Johnson stated, "We continued to experience pricing normalization that was discussed in previous quarters[,]" while assuring investors that "second quarter results were in line with our expectations, both sequentially and from a year-over-year perspective." CEO Waltz further assured investors that "we are within our expectations of the pricing normalization topic." During the question-and-answer portion of the call, an analyst asked CEO Waltz to "comment on the significance of any imports of conduit," noting that "there seems to be a very small presence of imports." In response, CEO Waltz stated that Atkore has a "price premium" due to "our reputation, our quality, [and] our ability to ship."

34. Then, on July 24, 2024, the short seller firm ManBear published a short report titled "Pipe Price Fixing." The Short Report accused Atkore and three other PVC Pipe manufacturers of using the commodity pricing service OPIS to coordinate pricing actions, thereby fixing PVC Pipe prices. The Report states, in pertinent part:

> **We believe the apparent price fixing has resulted in massively inflated pipe prices and converter margins**. These prices appear to defy economic logic, remaining at extremely elevated levels despite normalized supply chains, normalized input costs (resin), and weak demand. Today, PVC municipal [water] and conduit pipe prices remain 4.7x and 2.7x above pre-Covid levels, respectively, according to OPIS.[1]

---

[1] Emphasis in original.

9

35. Less than two weeks later, on August 6, 2024, Atkore held an earnings call in connection with the Company's financial results for the third quarter of its fiscal year 2025. During that call, an RBC analyst specifically asked about the allegations that Atkore and other PVC Pipe manufacturers were "collu[ding]" to control PVC Pipe pricing. In response, CEO Waltz plainly stated, "I'm going to claim that report is unsubstantiated from the conclusions it tries to make."

36. Then, from August 2024 to early November 2024, after CEO Waltz assured investors that the Short Report's claims were "unsubstantiated," Atkore was named as a defendant in multiple civil antitrust lawsuits. *See*, *e.g.*, *In re PVC Pipe Antitrust Litigation*, No. 24-cv-7639 (N.D. Ill. filed August 23, 2024) (the "PVC Antitrust Actions").

37. In the same manner as described in the Short Report, the PVC Antitrust Action allege that Atkore and other U.S.-based PVC Pipe manufacturers exchanged competitively sensitive business information, including information regarding future PVC Pipe pricing and sales, through OPIS to artificially inflate the price of PVC Pipes. For example, the PVC Antitrust Actions allege:

> On June 28, 2024, one week after reporting on the consensus of converters to seek a single price increase of 5% over the current market level, the OPIS Newsletter reported that all major converters raised prices with almost identical pricing in every region they served. Defendant Cantex issued price sheets at $396.75/100 ft in the East region, $396.75/100 ft in the South Central region, $431.25 in the North Central region, $402.50/100 ft in the Southwest region, and $425.50/100 ft in the Northwest region. Defendants Prime, National Pipe, Southern Pipe, and IPEX followed with similar price sheets for the regions they serve. Defendant Atkore issued price sheets at $396.75/100 ft in the East and South Central regions, $431.25/100 ft in the North, and $402.50/100 ft in the Southwest.

Complaint ¶ 49, *In re PVC Pipe Antitrust Litig.*, No. 24-cv-7639 (N.D. Ill. Aug. 23, 2024), ECF No. 1.

38.     On November 21, 2024, Atkore filed its Annual Report on Form 10-K for its fiscal year 2024, ended September 30, 2024 ("2024 10-K").  In the 2024 10-K, Atkore responded to the filing of the PVC Antitrust Actions, stating:

> The Company believes there are defenses, both factual and legal, to the allegations in these various proceedings and the Company plans to vigorously defend itself.  As these proceedings are in the early stages, it is not possible for the Company to predict any outcome or estimate the amount of loss, if any, which could be associated with any adverse decision.  While the Company does not believe that any of these proceedings will have a material adverse effect on its financial condition, the Company cannot give assurance that the proceedings will not have a material effect on its results of operations.

39.     That same day, Atkore issued a press release announcing its financial results for the fourth quarter and full year of fiscal 2024, ended September 30, 2024.  In the press release, the Company reported fourth quarter net sales of $788.3 million and full fiscal year 2024 net sales of $3.2 billion, representing year-over-year decreases of approximately 9%.  Additionally, Atkore reported net sales guidance of $655 million to $705 million for the first quarter of fiscal year 2025—below analysts' estimates of $743.6 million.

40.     Discussing the impacts to the Company's adjusted EPS during the corresponding earnings call held later that day, CEO Waltz claimed, "[A]s we discussed earlier, our price versus cost assumptions reflect various competitive dynamics, including new domestic competition and continued impacts from imported products."  CFO Deitzer further disclosed that the Company's adjusted EBITDA were affected due to "pricing normalization," stating, "Net sales in our Electrical segment were $565 million, and our adjusted EBITDA margins compressed due to continued pricing normalization in our PVC products," as well as "pressure from import competition in our steel conduit products."

11

41. The above statements identified in ¶¶ 29-40 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading. Specifically, Defendants failed to disclose that: (1) Atkore engaged in an anticompetitive price-fixing scheme that artificially inflated the price of PVC Pipes; (2) Atkore reaped significant, unsustainable financial benefits from its anticompetitive conduct; (3) as Atkore's price-fixing scheme was exposed, the Company and its price-fixing co-conspirators were no longer able to artificially inflate the price of PVC Pipes, resulting in a substantial decrease in the price of PVC Pipes; (4) Atkore's business and operations were negatively impacted; and (5) as a result, Defendants' positive statements Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Is Revealed**

42. The truth was revealed before markets opened on February 4, 2025, when Atkore announced its financial results for the first quarter of fiscal year 2025, reporting net sales of $661.6 million, down 17% year-over-year and below analysts' estimates of $680.7 million. Additionally, Atkore provided guidance for the rest of fiscal year 2025, including adjusted EPS of $5.75 to $6.85 and adjusted EBITDA of $375 million to $425 million—representing a significant reduction from its previously issued guidance of $7.80 to $8.90 and $475 million to $525 million, respectively.

43. During the corresponding earnings call held later that day, CEO Waltz expressed disappointment regarding Atkore's fiscal 2025 EBITDA guidance, as the Company "continue[s] to operate in these conditions[,]" and that the "challenges we are navigating are not what we anticipated at the end of fiscal year 2022 when we signal normalization of our record profits."

12

44. During that same call, CFO Deitzer disclosed that Atkore's "plastic pipe and conduit product category declined mid-single digits during the quarter[,]" compared to "high single digits in the prior year." Moreover, CFO Deitzer reiterated that the EBITDA guidance reduction was attributed to the poor performance of Atkore's PVC business, stating, "I'd say roughly $75 million or 3/4 of that is on the PVC side."

45. Analysts were stunned by the revelations. For example, RBC Capital analysts reported that Atkore's newly issued guidance "marks the fourth consecutive quarter of a guidance cut . . . and implies more pricing cuts are needed to protect [Atkore's] market share," adding that "[e]ssentially all pricing gains since COVID have been given back." Similarly, Roth Capital analysts lowered estimates for fiscal year 2025 and 2026, citing "acceleration in pricing pressure for PVC" and "margin compression."

46. On this news, the price of Atkore common stock fell $15.59 per share, or nearly 20%, from a closing price of $79.72 per share on February 3, 2025, to a closing price of $64.13 per share on February 4, 2025.

### Post-Class Period Developments

47. On February 14, 2025, Atkore issued a press release announcing that on February 13, 2025, the Company had received a grand jury subpoena from the DOJ Antitrust Division. Atkore disclosed that the subpoena called for the "production of documents relating to the pricing of the Company's PVC pipe and conduit products."

### CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that purchased Atkore common stock between February 1, 2024 and February 3, 2025, inclusive, and

13

who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

49. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Throughout the Class Period, common stock of Atkore actively traded on the NYSE under the symbol "ATKR." Millions of Atkore shares were traded publicly during the Class Period on the NYSE. As of January 29, 2025, the Company had more than 34 million shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Atkore or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

50. Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

51. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that conflict with those of the Class.

52. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

14

a) whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b) whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c) whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders misrepresented material facts about the business, operations, and prospects of Atkore;

d) whether statements made by Defendants to the investing public misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Atkore;

e) whether the market price of Atkore common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f) the extent to which the members of the Class have sustained damages and the proper measure of damages.

53. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## UNDISCLOSED ADVERSE INFORMATION

54. The market for Atkore common stock was an open, well-developed, and efficient market at all relevant times. As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, Atkore's common stock traded at artificially inflated

prices during the Class Period. Plaintiff and the other members of the Class purchased Atkore's common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Atkore and have been damaged thereby.

55. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of the Company's common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Atkore's business, operations, and prospects as alleged herein. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times. Defendants' materially false and/or misleading statements directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased the Company's common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

56. As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

16

57. As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Atkore, their control over, receipt, and/or modification of Atkore's allegedly materially misleading statements and omissions, and/or their positions with the Company, which made them privy to confidential information concerning Atkore, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

58. As a result of their purchases of Atkore's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

59. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Atkore who knew that the statement was false when made.

## LOSS CAUSATION

60. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

61. As detailed herein, during the Class Period, Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market. This artificially inflated the prices of Atkore's common stock and operated as a fraud or deceit on the Class. When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Atkore's stock fell precipitously, as the prior artificial inflation came out of the price.

17

**APPLICABILITY OF PRESUMPTION OF RELIANCE**
**(FRAUD-ON-THE-MARKET DOCTRINE)**

62. The market for Atkore common stock was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Atkore common stock traded at artificially inflated and/or maintained prices during the Class Period. Plaintiff and other members of the Class purchased the Company's common stock relying upon the integrity of the market price of Atkore common stock and market information relating to Atkore and have been damaged thereby.

63. At all times relevant, the market for Atkore common stock was an efficient market for the following reasons, among others:

a) Atkore was listed and actively traded on the NYSE, a highly efficient and automated market;

b) As a regulated issuer, Atkore filed periodic public reports with the SEC and/or the NYSE;

c) Atkore regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d) Atkore was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

64. As a result of the foregoing, the market for Atkore common stock promptly digested current information regarding Atkore from all publicly available sources and reflected such

18

information in the Company's stock price. Under these circumstances, all purchasers of Atkore common stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

65. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects—information that Defendants were obligated to disclose but did not—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNTS AGAINST DEFENDANTS

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder Against All Defendants**

66. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67. Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Atkore's common stock; and (iii) cause Plaintiff and other members of the Class to purchase Atkore

common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

68. Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Atkore common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

69. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Atkore's business, operations, and prospects, as specified herein. Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Atkore's business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Atkore and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

20

70. Each of the Individual Defendants' primary liability and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company and a member of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

71. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Atkore's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its common stock. As demonstrated by Defendants' misstatements of the Company's business, operations, and prospects, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

72.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Atkore common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the markets in which the securities trade, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants, Plaintiff and the other members of the Class purchased Atkore common stock during the Class Period at artificially inflated prices and were damaged thereby.

73.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the truth regarding the problems that Atkore was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased Atkore common stock, or, if they had purchased such shares during the Class Period, they would not have done so at the artificially inflated prices that they paid.

74.     By virtue of the foregoing, Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

75.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against All Individual Defendants

76.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

77.     The Individual Defendants acted as controlling persons of Atkore within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

79.     As set forth above, Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class

23

suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

80.     WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

a)     Declaring this action to be a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)     Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

c)     Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)     Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

81.     Plaintiff demands a trial by jury.

Dated: February 21, 2025                      Respectfully submitted,

By: */s/ Carol V. Gilden*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Carol V. Gilden (Bar No. 6185530)
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Tel.: (312) 629-3737
Fax: (312) 357-0369
cgilden@cohenmilstein.com

*Liaison Counsel for Plaintiff Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefits Fund*

24

**SAXENA WHITE P.A.**
Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
mduenas@saxenawhite.com

*Counsel for Plaintiff Westchester Putnam Counties*
*Heavy & Highway Laborers Local 60 Benefits Fund*

25

## CERTIFICATION AND AUTHORIZATION

I, Christine P. Costa, on behalf of Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefits Fund ("Local 60"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I have reviewed a complaint prepared against Atkore Inc. ("Atkore") alleging violations of the federal securities laws and authorized its filing. I am authorized in my capacity as Fund Manager to initiate litigation and to execute this Certification on behalf of Local 60.

2. Local 60 did not purchase the securities that are the subject of this action at the direction of counsel, or in order to participate in any action arising under the federal securities laws.

3. Local 60 is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Local 60's transactions in Atkore common stock during the Class Period are set forth in the attached Schedule A.

5. Local 60 has sought to serve and was appointed as lead plaintiff and/or representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *Peneycad v. RTX Corp.*, No. 3:23-cv-1035 (D. Conn.).

6. Local 60 has sought to serve as a lead plaintiff or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff appointment, was not appointed lead plaintiff, or the lead plaintiff decision is still pending:

   *Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefits Fund v. Walgreens Boots Alliance, Inc.*, No. 1:24-cv-8559 (N.D. Ill.); and

   *Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefits Fund v. Shoals Techs. Grp., Inc.*, No. 1: 24-cv-334 (M.D. Tenn.).

7. Local 60 will not accept any payment for serving as a representative party on behalf of the Class beyond Local 60's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

1

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21 day of February, 2025.

*Westchester Putnam Counties Heavy &*
*Highway Laborers Local 60 Benefits Fund*

Christine P. Costa, Fund Manager

2

## SCHEDULE A
### Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefits Fund
### Transactions in Atkore Inc.

| Common Stock Purchases | | |
|---|---|---|
| Date | Shares | Price |
| 04/02/24 | 43 | $190.5771 |
| 04/03/24 | 1,163 | $193.4741 |

| Common Stock Sales | | |
|---|---|---|
| Date | Shares | Price |
| 05/14/24 | 1,206 | $155.4254 |

3